UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BETH KRAMER, on behalf of herself and all others similarly situated,

Plaintiff,

v.

ANAYA PERSONAL CARE PRODUCTS LLC d/b/a PACIFIC HEALTH LABORATORIES,

Defendant.

---

Docket No.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, BETH KRAMER**,** ("Plaintiff" or "Ms. Kramer"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant, ANAYA PERSONAL CARE PRODUCTS LLC d/b/a PACIFIC HEALTH LABORATORIES, ( "PACIFICHEALTH" or "Defendant"), hereby alleges as follows:

**INTRODUCTION**

1. Plaintiff, Beth Kramer, is a resident of New York, New York, and is permanently disabled due to advanced Macular Degeneration complicated by Retinal Detachment, resulting in profound central vision loss. As documented by Dr. Kyle Kovacs, MD, St. Giles Associate Professor of Clinical Ophthalmology at Weill Cornell Medicine, on April 12, 2025, Ms. Kramer's best corrected visual acuity measures 20/320 in the right eye and 20/280 in the left eye, with severe central field loss, dense scotomas, markedly reduced contrast sensitivity, and a functional visual field constricted to approximately 15–18 degrees. These findings meet the statutory definition of legal blindness under both federal and New York State law. (See Exhibit A.)

2. Due to her permanent and progressive visual impairment, Ms. Kramer relies exclusively on-screen reading software, including NonVisual Desktop Access (NVDA), to navigate digital interfaces, read product information, and complete online transactions. Her reliance on assistive technology is essential to her ability to access goods and services on equal terms with sighted consumers. NVDA's ability to interpret properly coded websites is critical to her independence, safety, and daily functioning.

3. Plaintiff brings this civil action against Anaya Personal Care Products LLC d/b/a Pacific Health Laboratories for its failure to design, construct, maintain, and operate its highly interactive e-commerce website, www.pacifichealthlabs.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website, and therefore to the essential products and services offered therein, constitutes unlawful discrimination in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq., and related state and city civil rights laws.

4. On September 11, 2025, September 23, 2025, and October 5, 2025, Plaintiff attempted to access Defendant's website using NVDA for the purpose of browsing and purchasing several of Defendant's nutritional and performance-enhancing products, including Endurox R4, Accelerade, 2nd Surge, and other formulations marketed as scientifically developed for endurance, recovery, and athletic performance. Plaintiff sought to review product descriptions, ingredients, sizes, pricing, and to complete a purchase independently.

5. Despite these repeated attempts Plaintiff was unable to navigate or complete a transaction due to pervasive accessibility barriers that rendered the website incompatible with NVDA. These barriers included, but were not limited to:

Missing alternative text on product images,

Empty links and empty buttons,

Missing form labels and select elements without labels,

Broken ARIA references,

ARIA controls with no labels,

improper role assignments, including menu items not owned by menus, tabs not owned by tab lists, and regions lacking proper parent roles;

Suspicious or meaningless alt text,

broken links including repeated HTTP 406, 400, 403, and 404 errors across more than 50 pages,

Tab index misuse,

Missing first-level headings, and

Exceptionally low contrast text that was unreadable to users with reduced contrast sensitivity.

6. Independent SortSite accessibility audits of www.pacifichealthlabs.com revealed 14 Level A violations across 46 pages; more than 44 structural role violations involving menu items, navigation, and tab lists; 45 pages containing links with no accessible name; multiple pages with missing alt text, mislabeled ARIA controls, and invalid list structures; over 50 broken links including repeated failures of Defendant's account, profile, and order-management URLs; three blank pages; widespread spelling errors; iframe elements lacking titles; and list items placed outside of proper list containers. These violations directly contravene WCAG 2.1 Level AA, the industry standard for digital accessibility. Exhibit B.

7. Plaintiff specifically sought out Anaya Personal Care Products LLC d/b/a Pacific Health Laboratories due to its reputation for scientifically formulated performance nutrition, including its flagship Endurox R4 recovery formula and Accelerade endurance drink, which are marketed as proprietary carbohydrate-protein blends not widely available through other retailers. Many of Defendant's products are sold primarily or exclusively through its own website, making www.pacifichealthlabs.com the only meaningful channel through which Plaintiff could review ingredients, compare formulations, and complete a purchase. As a legally blind consumer who cannot visually inspect packaging in a physical store, Plaintiff depends entirely on accessible online product descriptions, ingredient disclosures, and usage instructions to make informed decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to sighted customers.

8. Upon information and belief, Anaya Personal Care Products LLC d/b/a Pacific Health Laboratories is a New Jersey corporation with its principal place of business located at 100 Matawan Road, Suite 150, Matawan, New Jersey 07747. Defendant owns, operates, and controls the website www.pacifichealthlabs.com, which offers nationwide access to its nutritional products, including to residents of New York.

9. Despite its national reach, sophisticated branding, and longstanding presence in the sports-nutrition market, Defendant has not implemented WCAG-compliant accessibility features across its website. Defendant's failure to adopt accessible design practices reflects a knowing disregard of established digital accessibility standards and denies blind and visually impaired consumers equal access to its goods and services.

10. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate

policies, practices, and procedures to ensure that its website becomes and remains fully accessible to blind and visually impaired users. Plaintiff is deeply invested in managing her nutritional and performance-recovery needs and relies on accessible product descriptions, ingredient lists, delivery information, and checkout functionality to complete purchases independently. Unless Defendant remedies the numerous access barriers on www.pacifichealthlabs.com, Plaintiff will continue to be unable to navigate, browse, and complete transactions on equal terms with sighted consumers.

11. Plaintiff therefore seeks declaratory and injunctive relief requiring Defendant to adopt, implement, and maintain digital accessibility measures consistent with WCAG 2.1 Level AA or comparable standards so that www.pacifichealthlabs.com is fully and independently usable by blind and visually impaired individuals now and on an ongoing basis.

**JURISDICTION AND VENUE**

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

13. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

14. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendant conducts substantial and continuous business in this District through its interactive

website, www.pacifichealthlabs.com. Plaintiff has repeatedly accessed and attempted to use the Website from her residence in New York, New York, which falls within this Court's jurisdiction. A significant portion of the discriminatory conduct giving rise to this action occurred within the Southern District of New York ("SDNY").

15. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District. Defendant participates in New York's economic life by clearly performing business over the Internet. Through its interactive Website, www.pacifichealthlabs.com, Defendant enters into contracts for the sale of its products and services with residents of New York. These online sales contracts involve, and require, Defendant's knowing and repeated transmission of computer files over the Internet. See *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.,* 585 U.S. ___ (2018); Godfried v. Ford Motor Co., 2021 U.S. Dist. LEXIS 87012 (D. Me. May 6, 2021); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.*, No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022).

16. Thus, jurisdiction and venue are appropriate in this District because Plaintiff resides here, and courts have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state operators.

## THE PARTIES

17. Plaintiff, BETH KRAMER, is and was at all relevant times a resident of New York County, New York.

18. Plaintiff is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). As documented by Dr. Kyle Kovacs, MD, St. Giles Associate Professor of Clinical Ophthalmology at Weill Cornell Medicine, on April 12, 2025, Plaintiff suffers from advanced Macular Degeneration complicated by Retinal Detachment, resulting in best-corrected visual acuity of 20/320 in the right eye **and** 20/280 in the left eye, severe central field loss, dense scotomas, markedly reduced contrast sensitivity, and a functional visual field of approximately 15–18 degrees. Plaintiff is unable to read standard print or visually interpret digital interfaces and relies exclusively on screen-reading software, including NonVisual Desktop Access ("NVDA"), to access online content and complete transactions independently.

19. Upon information and belief, Defendant Anaya Personal Care Products LLC d/b/a Pacific Health Laboratories is a New Jersey corporation with its principal place of business located at 100 Matawan Road, Suite 150, Matawan, New Jersey 07747. Defendant owns, operates, and controls the commercial website www.pacifichealthlabs.com, through which it markets and sells its nutritional and performance-enhancing products, including Endurox R4, Accelerade, 2nd Surge, and related formulations, to consumers throughout the United States, including residents of New York. Defendant's website is the primary platform through which it offers product

descriptions, ingredient disclosures, pricing, promotions, and online purchasing functionality.

20. Defendant's website functions as a commercial place of public accommodation under Title III of the ADA, the NYSHRL, and the NYCHRL. At all relevant times, Defendant has maintained exclusive control over the design, coding, digital infrastructure, and ongoing operation of the website and is responsible for ensuring its compliance with established accessibility standards, including the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA. Despite this obligation, the website contains pervasive accessibility barriers—including missing alternative text, empty links, empty buttons, missing and mislabeled form fields, broken ARIA references, tabindex misuse, missing first-level headings, very low contrast text, and iframe elements lacking titles—that prevent blind and visually impaired users from independently navigating, understanding, or completing transactions. These deficiencies were confirmed through independent SortSite audits of Defendant's website, which revealed multiple Level A violations, more than 44 structural role errors, over 50 broken links, missing alt text across numerous pages, invalid list structures, and widespread labeling failures. Defendant's failure to implement accessible coding practices renders the website unusable for blind consumers and places Defendant on actual and constructive notice of its ongoing noncompliance.

21. Defendant's website functions as a commercial place of public accommodation subject to Title III of the ADA, the NYSHRL, and the NYCHRL. At all relevant times, Defendant has maintained control over the design, coding, digital infrastructure, and ongoing operation of the Website and is responsible for ensuring its compliance with applicable accessibility standards, including the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA. Despite this obligation, the Website contains pervasive accessibility barriers—including missing alternative

text, empty and multiple form labels, inaccessible buttons, and contrast failures—that prevent blind users from independently navigating and completing transactions. These deficiencies render the Website inaccessible to blind and visually impaired individuals and place Defendant on actual and constructive notice of its ongoing noncompliance.

## NATURE OF ACTION

22. This action arises under **Title III of the Americans with Disabilities Act**, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing commercial website that denies blind and visually impaired individuals full and equal access to its goods, services, and digital content. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple, programmatically detectable access barriers that prevented meaningful engagement with its products and services. Defendant's failure to design, construct, and maintain its website in accordance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA constitutes unlawful discrimination and violates federal accessibility standards.

23. The Internet has become an essential tool for daily life, serving as a primary means of shopping, researching, communicating, learning, and accessing goods and services. This is true for sighted individuals and blind or visually impaired individuals alike. For blind consumers, accessible websites are not a convenience—they are a necessity for independent living and equal participation in modern commerce.

24. Blind and visually impaired individuals access websites using keyboards in conjunction with screen-reading software that vocalizes visual content or displays it on a refreshable Braille device. This technology is the only method by which blind individuals can

independently navigate the Internet. Unless websites are properly coded to interface with screen-reading software, blind users cannot perceive or interact with the information, products, or services offered online.

25. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

26. Plaintiff, Beth Kramer**,** is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., the NYSHRL, and the NYCHRL. Due to advanced Macular Degeneration complicated by Retinal Detachment, Plaintiff suffers from profound central vision loss, dense scotomas, and markedly reduced contrast sensitivity. She relies exclusively on NVDA to access digital content, including e-commerce websites such as Defendant's.

27. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. As explained in *Andrews v. Blick Art Materials, LLC***,** 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017), screen-reading software "translates the visual Internet into an auditory equivalent," allowing blind users to navigate websites through auditory cues rather than visual ones. When websites lack proper coding, these cues disappear, rendering the site unusable. According to the American Foundation for the Blind, approximately 26 million American adults report significant visual impairment, underscoring the widespread need for accessible digital design.

28. The World Wide Web Consortium ("W3C") has published WCAG 2.0 and 2.1, internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been repeatedly recognized by federal courts as the appropriate benchmark for ADA compliance.

29. Non-compliant websites pose recurring and predictable barriers to blind and visually impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements;

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible Portable Document Format (PDF) files;

q. User interface elements whose roles, states, and values cannot be programmatically determined or conveyed to assistive technology.

## STATEMENT OF FACTS

30. Plaintiff Beth Kramer is a legally blind consumer residing in New York County, New York. Due to advanced Macular Degeneration complicated by Retinal Detachment, Ms. Kramer experiences profound central vision loss, dense scotomas, markedly reduced contrast sensitivity, and a functional visual field of approximately 15–18 degrees. As documented by Dr. Kyle Kovacs, MD of Weill Cornell Medicine on April 12, 2025, her best corrected visual acuity measures 20/320 in the right eye and 20/280 in the left eye, meeting the federal and New York State definitions of legal blindness. She is unable to read standard print or visually interpret digital interfaces and relies exclusively on NVDA screen reading software to access online content and complete transactions independently.

31. On September 11, 2025, September 23, 2025, and October 5, 2025, Plaintiff visited Defendant's website, www.pacifichealthlabs.com, with the specific intent to purchase several of Defendant's nutritional and performance-enhancing products. Plaintiff was particularly interested in Endurox R4, Accelerade, 2nd Surge, and other formulations marketed as scientifically developed for endurance, recovery, and athletic performance. Plaintiff selected these products because they are marketed as proprietary carbohydrate-protein blends and specialized nutritional formulations that are not widely available through third-party retailers. As someone with significant visual impairment who cannot read product packaging in stores, Plaintiff relies on accessible online ingredient lists, product descriptions, and usage instructions to make informed

purchasing decisions.

32. Plaintiff specifically sought out Anaya Personal Care Products LLC d/b/a Pacific Health Laboratories because many of its flagship products, including Endurox R4 and Accelerade, are sold primarily or exclusively through Defendant's own website. Plaintiff was drawn to the brand's reputation for science-based formulations and its claims of enhanced performance and recovery benefits. Because Plaintiff cannot visually inspect packaging in a physical store, she depends entirely on accessible online product descriptions, ingredient disclosures, and usage instructions. Defendant's website is the primary and often exclusive point of sale for these products, making digital accessibility essential for blind consumers.

33. When attempting to access the product pages for Endurox R4, Accelerade, and related items, Plaintiff encountered pervasive accessibility barriers that prevented her from independently understanding product details, navigating the site, or completing a purchase. Product images were coded with missing or meaningless alternative text, causing NVDA to announce only "graphic," "link," or silence. As a result, Plaintiff could not determine which image corresponded to which product, nor could she differentiate between multiple items displayed on the same page.

34. Plaintiff also encountered empty form labels, missing labels, and multiple conflicting labels on essential interactive elements, including size selectors, quantity fields, and "Add to Cart" buttons. NVDA announced these elements simply as "button," "edit," or "link," without context. This prevented Plaintiff from confirming whether she was selecting a product size, adjusting quantity, or initiating checkout. These barriers made it impossible for Plaintiff to complete a transaction independently.

35. Additional barriers included very low contrast text, missing first-level headings, broken ARIA references, tabindex misuse, and empty links, all of which prevented NVDA from reliably detecting or announcing product names, prices, categories, or navigational cues. Because these elements were visually embedded or coded without semantic structure, NVDA could not expose them to Plaintiff. As a result, she could not determine which products were available, what their prices were, or whether her selections had been successfully added to the cart.

36. Independent SortSite accessibility audits conducted by Plaintiff's counsel on the exact pages Plaintiff attempted to use revealed extensive, programmatically detectable violations of WCAG 2.1 Level A and AA standards. Across 46 pages, the audit identified 14 Level A violations, more than 44 structural role errors, over 50 broken links including repeated HTTP 406, 400, 403, and 404 errors, missing alternative text on numerous product images, empty links, empty buttons, missing form labels, mislabeled ARIA controls, invalid list structures, and iframe elements lacking titles. These violations directly correspond to the functional barriers Plaintiff experienced and confirm that the website is incompatible with NVDA.

37. These barriers were not hypothetical or generalized—they appeared on the precise product pages Plaintiff attempted to access and prevented her from independently reviewing product details, confirming availability, or completing checkout. Plaintiff's exclusion was real, repeatable, and corroborated by objective forensic evidence.

38. Plaintiff intends to return to www.pacifichealthlabs.com once the website is made accessible. Her desire to purchase Endurox R4, Accelerade, 2nd Surge, and related nutritional products remains strong, as these items meet her performance and recovery needs and are available primarily through Defendant's online platform. Plaintiff prefers to complete these purchases

independently using NVDA rather than rely on third parties or inaccessible retailers. Her intent to return is genuine, ongoing, and directly tied to her need to access and purchase the specific Anaya Personal Care Products LLC d/b/a Pacific Health Laboratories products she previously attempted to obtain.

## CLASS ACTION ALLEGATIONS

39. Plaintiff BETH KRAMER brings this action on behalf of herself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.pacifichealthlabs.com and were denied equal access to its products, services, and support due to persistent digital accessibility barriers during the relevant statutory period.

40. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.pacifichealthlabs.com and were similarly denied equal access to its offerings due to the same systemic barriers.

41. Common questions of law and fact exist among the Class, including:

- Whether www.pacifichealthlabs.com qualifies as a "public accommodation" under Title III of the ADA;
- Whether Defendant's Website constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to PacificHealth products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by

excluding blind users from meaningful participation in the digital marketplace.

42. Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. She encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

43. Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

44. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

45. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

46. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.ancestry.comand faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

47. Plaintiff, BETH KRAMER, on behalf of herself and the Class Members, repeats

and realleges every allegation of the preceding paragraphs as if fully set forth herein.

48. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

49. Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

50. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

51. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

52. The acts alleged herein constitute violations of Title III of the ADA and the

regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

53. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

54. Plaintiff, BETH KRAMER, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

56. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

57. Defendants, at all relevant times to this action, own and operate a place of

public accommodation, the subject Website, www.pacifichealthlabs.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

58. Plaintiff has visited the Website on a number of occasions and has encountered barriers to her access that exist.

59. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

60. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

61. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the

facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

62. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

63. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

64. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

65. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

66. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs

and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law) ("NYCRL")**

67. Plaintiff, BETH KRAMER, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

68. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

69. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

70. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

71. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

72. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

73. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

74. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

75. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*...

76. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

77. Plaintiff, BETH KRAMER, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

78. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful

discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

79. Defendant is subject to NYCHRL because it owns and operates the Website www.pacifichealthlabs.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

80. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

81. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

82. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

83. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

84. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

85. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

86. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

87. Plaintiff is also entitled to reasonable attorneys' fees and costs.

88. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

89. Plaintiff, BETH KRAMER, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

90. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

91. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
April 20, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com